UNITED STATES v. WALTER SCOTT STAMP CO.

(Circuit Court, S. D. New York. April 15, 1898.)

POST OFFICE—NEWSPAPER AND PERIODICAL STAMPS—LEGALITY OF SALES.

Replevin to recover newspaper and periodical stamps as unlawfully in the possession of defendant, the claim being that no government official was ever authorized to part with the possession thereof, and that the stamps were therefore presumptively purloined from the government. The undisputed evidence shows that stamps of the varieties in question were issued by the post-office department pursuant to act of congress of June 23, 1874, requiring prepayment of postage on newspaper matter by adhesive postage stamps to be affixed either to the mail matter or to the memorandum of mailing, or in such other manner as the postmaster general may direct. The postmaster general directed that the stamps should be affixed to the stub of a receipt, showing the amount of money prepaid as postage, and instructed postmasters that no other use of the stamp was permitted. Subsequently, in 1881, the postmaster general expressly prohibited postmasters from selling these stamps to publishers or others. The official reports, however, admit that this rule was frequently violated, either in ignorance or defiance of the regulation. It was also admitted that "newspaper and periodical stamps" were sold as "specimens" by order of the third assistant postmaster general to all persons willing to pay face value therefor, and the sale of stamps as "specimens" was not discontinued until the year 1889. It was further admitted that more than 700 complete sets of all varieties of postage stamps have been exchanged, through the International Bureau of the Postal Union, with the foreign governments who joined in the Universal Postal Convention, and that no control was expressly reserved over the action of such foreign governments in disposing of the stamps thus exchanged. *Held* (1) that the direction of the postmaster general, requiring the stamps to be affixed to the memorandum of mailing rather than to the mail matter, was not even inferentially a prohibition of sale by postmasters; (2) that the sale

of stamps as "specimens" was not unlawful, but, even if irregular, such sales were ratified by the government by its acceptance of the proceeds into its treasury; (3) that the exchange of postage stamps with members of the Postal Union was without reserve, and did not render unlawful the sale or gift of such stamps to private dealers or collectors; (4) that the possession of newspaper and periodical stamps by persons outside of, and unconnected with, the post-office department, is not presumptively unlawful.

Mr. Lloyd opened for the plaintiff.

Mr. Rosenblatt opened for the defense, and read in evidence extracts from Tiffany's History of United States Postage Stamps, tending to show that the postage-stamp system was adopted for the convenience of the public, and to enable all applicants to purchase the same, at wholesale or retail, for prepayment of postage.

The three stipulations are offered in evidence, and are marked, respectively, "Exhibit 1," "Exhibit 2," and "Exhibit 3."

Mr. Rosenblatt: I ask the court to direct a verdict for the defendant.

LACOMBE, Circuit Judge (orally). I am prepared now to dispose of this somewhat extraordinary case. It is an action for replevin in which the plaintiff, the government of the United States, through the post-office department, claims title to a lot of postage stamps,—that is, newspaper and periodical postage stamps,—and the marshal has levied upon them. They are divided into three classes. The first comprises newspaper and periodical stamps, under the act of 1865, or prior to 1865, as to which it is now conceded by the plaintiff that the facts do not warrant a finding in the plaintiff's favor, except as to the one-cent stamps, as to which contention is still made. The second class contains certain stamps which are referred to as "specimen stamps." With regard to these, the situation is this: In 1875, over the signature of the third assistant postmaster general, who is the one that, in the organization of the department, has special charge of stamps, etc., there was a circular issued from the post-office department, Washington, D. C., stating that "the department is prepared to furnish upon application, at face value, specimens of adhesive postage stamps issued under its auspices, as follows." Then follows a list of various stamps, running back as far as 1847, and including the various issues and denominations now in suit. This circular was sent broadcast throughout the community, and was never canceled or repudiated by the postmaster general. Upon the strength of this circular the confiding citizen applies to the post-office department, receives the stamps, pays the money, and the post-office department covers the money into the treasury of the United States, and, having done so, turns round and insists that the same stamps were stolen, embezzled, and purloined from the United States, and are still its property, not because any act of congress has prohibited the sale, but because some years after the circular above quoted from was issued the postmaster general made regulations forbidding postmasters to sell this particular kind of stamp. Comment on such a performance as that would seem to be wholly superfluous. If it

were a transaction between private parties, a well-known phrase of the police court would most properly describe it.

There remains, however, a third class, covering other stamps which are not specimen stamps, and are not within the terms of this circular offering them for sale, and we must look into the situation with regard to those. Except for one lot of six stamps described as "newspaper stamps," 1895, etc., being lot No. 141, all these stamps are issued on or prior to 1875, except two lots, 132 and 134, which seem to have been issued in 1879. The newspaper stamps, so called, are postage stamps undoubtedly,—so conceded. The description of them in the Regulations—indeed, in this circular—is such that it is plain that they are, as one would infer that they were without any evidence, postage stamps. From the time that the government began to print and circulate postage stamps to facilitate the prepayment of postage on letters, the postmaster general or post-office department, or whoever has had them in charge, has been authorized to sell them, to have them distributed at places where persons who needed to use them could purchase them, and in some acts he has been required so to do. I do not find, and I am not referred to, any act of congress prohibiting the sale of this particular kind of stamp. On the contrary, the act of 1874 (section 6), which authorizes the issue of such stamps within the years which we have last referred to, provides that the parcels containing the newspapers and periodicals "shall be weighed in bulk and postage paid thereon by a special adhesive stamp to be devised and furnished by the postmaster general, which shall be affixed to such matter or to the sack containing the same or upon a memorandum of such mailing, or otherwise, as the postmaster may from time to time provide by regulations"; that is to say, the postmaster general is to provide regulations as to how the stamps shall be affixed. But there is nothing at all in the act prohibiting his selling such stamps to an individual who wants to use them to pay his postage with. It is claimed, however, that under the general powers of the postmaster general to make regulations for the government of the service, regulations have been made prohibiting the sale of this kind of stamp. Upon examination of the quotations from the Regulations of the Post Office Department, which form a part of the stipulation, I am unable to find any regulation prohibiting the sale of these stamps to the public prior to that contained in the Postal Guide of 1881. On the contrary, immediately after the passage of the act of 1874 it seems to have been the practice of the post-office department to sell these very stamps to the public. In the report of the postmaster general for the year 1875, referring to the new stamps which were issued under the act of 1874, he says that the new system is working very well, and, describing the method employed, states that the papers to be mailed "are made up in bulk at the publication office, carried to the post office, and there weighed. The postage is computed on the whole issue, and the proper amount in stamps handed to the postmaster," etc., which plainly indicates that the stamps must have been in the possession of the citizen who wanted to use them to prepay upon his package. He could not very well "hand them to the postmaster," unless he had them to hand. It

seems clear, upon the evidence, that the practice under the act of 1874, immediately after its passage, was to sell and deliver these stamps to the public, who, when they wanted their package forwarded, gave stamps for the amount of the proper postage to the postmaster at the office where they turned it in. Now, the record contains no prohibition, prior to that one in the Postal Guide of 1881, against the sale of any of these stamps by postmasters, and inasmuch as, with the exception of lot 141, they are all prior to that date (1881), I reach the conclusion that at the time of the issuance of those stamps there was no statute law of the United States, and no regulation adopted under authority of statute, prohibiting the sale of such stamps to the public, either by the post-office department itself or by such subordinates, postmasters or others, as might have the stamps in charge.

There remains the single lot of six stamps—1, 2, 5, 10, 25, and 50 cents, respectively—of the issue of 1895. It appears that, under the terms of the so-called "Postal Union," over 700 complete sets of stamps have been issued by the government, without reserving any further right or title or control of their disposition, whether to foreign governments, or to delegates of those governments to the Postal Congress, or to the secretary of the congress, or where not, is immaterial. The stamps so issued passed wholly out of the power and control of the federal government, which no longer held any title to them, and the persons to whom they went could have sold them or done anything else that they pleased with them. Under those circumstances, in view of the fact that part of those stamps are of the same kind as those which were sold by the post-office department under the circular issued in 1875, and the money paid to the department and covered into the treasury of the United States; that part of them are of issues which were not prohibited from sale by act of congress, but which, on the contrary, were, when they were first issued, sold by postmasters to the public, and the sale of which has never been prohibited by postal regulations until some years after their issue; and that as to all of them there are 700 sets free to the world, which the post-office department has issued,—I am unable, such being the only evidence in the case, to sustain the averment of the complaint that the stamps in question here were "stolen, embezzled, and purloined" from the plaintiff, and that they are now the "property of the government of the United States." For these reasons I shall direct a verdict in favor of the defendant.

Mr. Lloyd: I except to that part of your honor's charge in which you state that there is no regulation or prohibition of any kind issued by the government prior to 1881.

The Court: There is nothing other than what you call my attention to here, which is inferential. On that date the language is specific. Prior to that it is inferential, because it says they must put them on the stub.

Mr. Lloyd: That is what I contend,—that it is inferential. I ask your honor to charge that, in the absence of any evidence to the contrary, the jury are bound to presume that the 700 sets of stamps de-

livered to the Postal Union under the treaty were issued by the government for the purpose for which they were intended.

The Court: I decline.

A verdict is found as directed.

Mr. Rosenblatt: I move for judgment on the verdict, and that the marshal be directed to return the stamps to the defendant.

Motion granted.